UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DONALD SNEED** | **CIVIL ACTION NO. 3:13CV2851** |
| **VERSUS** | **JUDGE JAMES** |
| **D.G. FOODS** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted filed by Defendant D.G. Foods, [doc. # 3], as well as a Motion to Stay, [doc. # 15], filed by *Pro se* Plaintiff Donald Sneed. For the reasons set forth below, it is recommended that the Motion to Dismiss be **GRANTED** and that the Motion to Stay be **DENIED**.

## Background

Plaintiff Donald Sneed is a former employee of Defendant D.G. Foods. [doc. # 1-1, p. 3]. On February 2, 2011, Defendant and the Retail, Wholesale and Department Store Union ("the Union") entered into a collective bargaining agreement ("CBA"). [doc. # 3-2]. As a member of the bargaining unit, Plaintiff's employment was subject to the terms of the CBA. *Id.* On September 11, 2013, Plaintiff filed an action in the Fourth Judicial District Court, Parish of Morehouse, Louisiana, alleging: (1) a breach of contract claim regarding the provision of safety gear; (2) a breach of contract claim regarding wages for time not worked; (3) an unfair labor practices claim; and (4) a claim of "slave treatment." [doc. # 1-1].

Defendant removed Plaintiff's state court action to this Court on October 10, 2013. [doc. # 1]. Defendant argues that the action should be dismissed because

> Plaintiff's Complaint fails to state a claim upon which relief can be granted with regard to the state law breach of contract claims as they allege breaches of a collective bargaining agreement and, as such, are completely preempted by the National Labor Relations Act. Furthermore, Plaintiff's federal law breach of contract clams under the NLRA must be dismissed for failure to state a claim upon which relief can be granted as Plaintiff failed to follow (or allege that he has exhausted) the final and binding grievance and arbitration provisions required by the collective bargaining agreement . . . . Plaintiff's unfair labor practices claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction as this claim falls within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Finally, Plaintiff's claim of "slave treatment" must also be dismissed for failure to state a claim upon which relief may be granted as there is no cause of action for "slave treatment" under state or federal law, and Plaintiff has failed to put forth any basis for such a claim.

[doc. # 3-1, p. 1].

Plaintiff has not filed any specific opposition to Defendant's Motion to Dismiss. However, Plaintiff has filed a "Motion to Stay" asking the Court to "direct the clerk of court to send a copy the entire [case] file to the NLRB with a court order for a complete investigation." [doc. # 15, p. 3]. Plaintiff also requests that the case be stayed until the NLRB can complete an investigation. *Id.*

Briefing is now complete; the matter is before the Court.

## Law and Analysis

### I. 12(b)(6) Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 678. A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

When considering a motion to dismiss, courts are generally limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Finally, a court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).

**II.    Plaintiff's First Breach of Contract Claim**

In his first breach of contract claim, Plaintiff alleges that Defendant breached the CBA by failing to provide him with safety gear. [doc. # 1-1, p. 5]. Plaintiff alleges that, as a result of Defendant's breach, he had to spend over $500.00 to supply himself with safety gear. *Id.* Plaintiff's claim does not reference any specific state or federal law.

To the extent that Plaintiff attempts to assert a state law breach of contract claim against Defendant, Plaintiff's claim is preempted. Section 301 of the Labor Management Relations Act ("LMRA") preempts state contract claims "when a decision on the state claim is inextricably

intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994). "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Degan v. Ford Motor Co.*, 869 F.2d 889, 894 (5th Cir. 1989) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)). Here, as Plaintiff is alleging a breach of a substantive provision of the CBA, resolution of Plaintiff's claim depends on an analysis of the CBA; thus, any state law claim Plaintiff has is preempted in favor of applying uniform principles of federal labor law.

The inquiry does not end, however, with the determination that Plaintiff's state law breach of contract claim is preempted by § 301 of the LMRA. Plaintiff's claims may be brought as a breach of a labor contract under § 301 provided that he has adequately stated a claim thereunder. *Thomas*, 39 F.3d at 621-22. To state a claim under § 301, a plaintiff must demonstrate both that he has exhausted the contractual remedies set forth in the CBA and that the union breached its duty of fair representation during the grievance and arbitration proceedings. *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164-65 (1983). Stated differently, federal courts lack jurisdiction to decide cases alleging violations of a CBA under the LMRA by an employee against his employer unless the employee has exhausted the contractual procedures for redress. *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000).

Here, the Court lacks jurisdiction because Plaintiff has failed to provide evidence that he exhausted the grievance procedures set forth in the CBA. The CBA includes a mandatory grievance and arbitration procedure as the exclusive remedy for violations of the CBA. Article

IV of the CBA requires an employee to "first present his grievance to his supervisor in an effort to resolve the dispute." [doc. # 3-2, p. 4]. Then, if the grievance is not resolved, an employee must present his grievance in writing to a "Company representative." *Id.* Plaintiff has not presented any evidence that he presented or even attempted to present his grievance to his supervisor or to the appropriate Company representative. Plaintiff's failure to exhaust the mandatory grievance procedure acts as a bar to litigation of his claim; accordingly, Plaintiff's first breach of contract claim should be **DISMISSED WITHOUT PREJUDICE**.[1]

### III. Plaintiff's Second Breach of Contract Claim

Plaintiff's second breach of contract claim alleges that Defendant breached an oral contract with Plaintiff and other sanitation employees when Defendant instituted a "Sanitation Incentive Pay" policy. [doc. # 1-1, p. 5-6]. Specifically, Plaintiff argues that Joey, a representative for Defendant, orally informed Plaintiff and other sanitation employees that they would receive pay for eight (8) hours of work each day irrespective of the amount of hours they actually worked. *Id.* at 5. According to Plaintiff, Defendant breached this oral contract when it initiated the "Sanitation Incentive Pay" Policy and refused to pay sanitation employees for time not worked. *Id.*

Like Plaintiff's first breach of contract claim, Plaintiff's second breach of contract claim is completely preempted by Section 301 of the LMRA. Again, Section 301 of the LMRA preempts state contract claims "when a decision on the state claim is inextricably intertwined

---

[1] A grievant may file suit without fulfilling the exhaustion requirement if (1) the union wrongfully refuses to process the grievance; (2) the employer's conduct amounts to a repudiation of the contract's remedial procedures; or (3) exhaustion would be futile because of the lack of an impartial decision-maker. *See Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978). None of these exceptions are applicable here.

with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Thomas*, 39 F.3d at 616. In *Eitmann v. New Orleans Pub. Serv., Inc.*, 730 F.2d 359 (5th Cir. 1984), the Fifth Circuit held that a union employee's claim for breach of a separate individual employment contract would be analyzed for LMRA preemption purposes just as a collective-bargaining agreement would be. The court held that to the extent that an individual contract seeks to "limit or condition" the terms of a collective-bargaining agreement that establishes the terms and conditions of employment, the collective-bargaining agreement must prevail. *Id.* at 363.

Here, Plaintiff avers that "Joey, the representative for [Defendant] told over 1000 people that [Defendant] would pay sanitation workers for 8 hours per day for work." [doc. # 1-1, p. 5]. Plaintiff essentially avers that Joey made a series of individual agreements with these 1000 employees; Plaintiff in no way contends that the Union was a party to these oral contracts. The independent oral contract seeks to limit or condition the terms of the CBA because Article XIII of the CBA states that the CBA "represents the entire Agreement between the parties and no other agreements or practices are binding upon either party with respect to wages, hours, or working conditions of the employees covered hereby." [doc. # 3-2, p. 11]. In addition, the provisions of the CBA may be "amended, supplemented, rescinded, or otherwise altered only by mutually [sic] agreement, in writing, between the Company and the Union." *Id.* It is clear that the purported oral contract seeks to limit or condition the terms of the CBA; thus, the CBA prevails.

Because the oral agreement is subject to the terms of the CBA, claims founded upon an interpretation of the oral agreement necessarily require interpretation of the CBA. In fact, the

very task of determining whether the oral contract limits or conditions the CBA reveals that the oral contract is inextricably intertwined with consideration of the terms of the CBA. Consequently, Section 301 completely preempts Plaintiff's second breach of contract claim and Plaintiff can only bring his claim as a breach of a labor contract. *See Thomas*, 39 F.3d at 621-22. As in his first breach of contract claim, Plaintiff has failed to provide evidence that he exhausted the grievance procedures set forth in the CBA. Accordingly, Plaintiff's second breach of contract claim should be **DISMISSED WITHOUT PREJUDICE**.

IV.     **Plaintiff's Allegation of Slave Treatment**

Plaintiff argues that Defendant's "Sanitation Incentive Pay" Policy forced employees to work for no payment and, in effect, was tantamount to "slave treatment." [doc. # 1-1, p. 7]. While Plaintiff appears to allege that he was not paid for work, a complete reading of his Petition and related exhibits clarifies that he is alleging that he was not paid for eight hours of work on days when he worked less than eight hours. In other words, rather than arguing that Defendant breached the terms of the "Sanitation Incentive Pay" Policy by withholding wages due, Plaintiff appears to argue that the policy terms themselves, as well as Defendant's adherence thereto, constitute slave treatment.

The "Sanitation Incentive Pay" Policy provides that sanitation crew members will be paid eight hours each shift for those shifts where less than eight hours of actual work are required only if certain conditions are met. [doc. # 1-1, p. 20]. From all outward appearances the policy seeks to reward employees that meet the requisite incentive conditions. However, Plaintiff construes the Policy as a penalty or punishment for not meeting the conditions. *Id.* at 8, 18. Plaintiff argues that the Policy conditions are extremely difficult to meet and that Defendant did not

provide him with the means to meet the conditions. *Id.* at 7. Notably, Plaintiff does not allege that Defendant withheld wages for the hours that Plaintiff actually worked.

Initially, it is unclear whether the Policy is part of the CBA or whether it stands alone. In addition, it is unclear what cause of action Plaintiff is attempting to plead. Liberally construed, Plaintiff could be asserting a violation of the Thirteenth Amendment or he could be arguing that the Policy's terms are unconscionable.

To the extent that the Policy is part of the CBA, any state law claim of unconscionability Plaintiff is attempting to assert is preempted by Section 301. Although Plaintiff is not alleging a breach of contract, Section 301 serves to preempt claims by plaintiffs alleging that a provision of the CBA itself violates state law. *See Medrano v. Excel Corp.*, 985 F.2d 230, 234 (5th Cir. 1993) (finding that where plaintiff was "essentially challenging the very legality" of a provision of the CBA, "which [defendant] had faithfully applied," plaintiff's claim was, "without a doubt . . . substantially dependent upon the meaning of a term of the CBA" and thus preempted). Consequently, because any claim of unconscionability is preempted, Plaintiff can only bring his claim under Section 301. *See Thomas*, 39 F.3d at 621-22. Just as Plaintiff failed to exhaust his two breach of contract claims, so too here Plaintiff has failed to provide evidence that he exhausted the CBA grievance procedures. Accordingly, to the extent that the Policy is part of the CBA, Plaintiff's claim of unconscionability should be **DISMISSED WITHOUT PREJUDICE**.

To the extent that the Policy stands alone and is not part of the CBA, and assuming that the Policy constitutes a binding contract[2], Plaintiff fails to state a claim of unconscionability. In

---

[2] The Policy may be more akin to a unilateral expression of company policy—one that does not evidence a meeting of the minds. The terms of the Policy may not have been bargained for by the parties, and any benefits conferred by it could constitute mere gratuities. *See Schwarz*

order to invalidate a contract due to unconscionability, a provision or term must "possess features of both adhesionary formation and unduly harsh substance." *Lafleur v. Law Offices of Anthony G. Buzbee, P.C.*, 960 So. 2d 105, 112 (La. App. 1 Cir. 2007). Here, Plaintiff does not claim that the contract was adhesionary. Nor does Plaintiff state facts that show the terms of the Policy were unduly harsh. If anything, the Policy served to benefit Plaintiff. As its name indicates, the Policy sought to incentivize employees by paying them more if they could meet deadlines, reduce tardiness, and reduce absenteeism. [*See* doc. # 1-1, p. 20]. Even with all reasonable inferences drawn in favor of Plaintiff, he fails to state a plausible claim of unconscionability. Accordingly, to the extent that the Policy constitutes a binding contract, Plaintiff's claim of unconscionability should be **DISMISSED WITH PREJUDICE**.

Finally, Plaintiff's allegation of slave treatment does not constitute a plausible Thirteenth Amendment violation. The Thirteenth Amendment to the U.S. Constitution states: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1. The Fifth Circuit has defined an involuntary servitude as "an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement." *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990). A showing of compulsion is a prerequisite to proof of involuntary servitude; therefore, when the employee has a choice to leave, even if it is a painful one, there is no involuntary servitude. *Id.*

Here, Plaintiff has not made allegations sufficient to support a claim under the Thirteenth

---

*v. Adm'rs of Tulane Educ. Fund*, 699 So.2d 895, 897-98 (La. App. 4 Cir. 1997) (recognizing that a grievance procedure handbook is a unilateral expression of company policy, and that the publishing of that policy does not evidence a meeting of the minds).

Amendment because Plaintiff was not compelled to work for Defendant. Plaintiff always had the option to leave Defendant's employ . . . and eventually did. [*See* doc. # 1-1, p. 14]. The fact that Plaintiff eventually resigned negates any claim that he was compelled to remain working for Defendant. Accordingly, Plaintiff's claim of slave treatment should be **DISMISSED WITH PREJUDICE.**

V.    **Plaintiff's Unfair Labor Practices Claim**

Plaintiff's final claim, styled as an unfair labor practice claim, alleges that Defendant altered the CBA unilaterally "by announcing the new 'Sanitation Incentive Pay'" Policy without discussing the proposed alteration with the sanitation crew or the Union. [doc. # 1-1, p. 6]. Defendant, in response, argues that the Court lacks subject matter jurisdiction over Plaintiff's claim because claims of unfair labor practices fall within the exclusive jurisdiction of the NLRB. [doc. # 3-1, p. 8].

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A finding that the court lacks subject matter jurisdiction may be based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera -Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

Under the unilateral change doctrine, as recognized by *NLRB v. Katz*, 369 U.S. 736, 743 (1962), an employer engages in unfair labor practices as defined in 29 U.S.C.A. § 158(a)(5) of the National Labor Relations Act ("NLRA") if it makes a unilateral change in a term or condition of employment—so-called "mandatory subjects" of bargaining—without first bargaining over the relevant term. The "mandatory subjects" include "wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party . . . ." 29 U.S.C.A. § 158(d). Claims of unfair labor practices brought under the aforementioned Section 158 of the NLRA fall within the exclusive jurisdiction of the NLRB and must be brought "in the first instance" before the NLRB. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-45 (1959).

Here, Plaintiff alleges that Defendant unilaterally altered wage terms in the CBA (i.e. a mandatory subject) by initiating the "Sanitation Incentive Pay" Policy. Thus, the Court lacks subject matter jurisdiction and Plaintiff's unfair labor practice claim should be **DISMISSED WITHOUT PREJUDICE**.

VI.     **Plaintiff's Motion to Stay**

On October 30, 2013, Plaintiff filed a "Motion to Stay" that asks the Court to send a copy of the entire case file to the NLRB along with a court order for a complete investigation. [doc. # 15, p. 3]. Plaintiff also asks the Court to stay the case until the NLRB completes its investigation and until "all legal means has [sic] been exhausted and the case is returned back to this court by law." *Id.*

Plaintiff does not provide this Court with any authority requiring the Court to transfer the

case file to the NLRB. Nor is the Court aware of any. Plaintiff is free to file his claims with the NLRB should he choose to do so. Plaintiff's request to transfer the entire case file to the NLRB is **DENIED**. In addition, as Plaintiff's claims are not properly before this Court, Plaintiff's Motion to Stay is **DENIED**.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss, [doc. # 3], be **GRANTED** and that Plaintiff's claims be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Stay, [doc. # 15], be **DENIED**.

The recommended dismissals are subject to Plaintiff's right to amend his complaint to cure, *provided he has a good faith basis for doing so*, the legally deficient allegations against Defendant, within the deadline to file objections to this Report and Recommendation. *See* below

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE**.

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 20th day of November, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE